**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GEORGE S. HOFMESITER FAMILY TRUST
DATED JUNE 21, 1991, et al,

       Plaintiffs,

                                Case No. 06-CV-13984-DT

v.

FGH INDUSTRIES, LLC, et al,

       Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS, GRANTING PLAINTIFFS'
MOTION TO DISMISS NON-DIVERSE PARTIES AND GRANTING
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Pending before the court is "Plaintiffs' Motion for Preliminary Injunction," which

was filed on September 29, 2006.  The court conducted a telephone conference with

the parties on October 4, 2006.  The parties agreed to a briefing schedule that would

allow Defendants to raise jurisdictional arguments in an expedited fashion while

reserving other grounds for any dispositive motions for a later time.  (10/6/06 "Order

Setting Schedule for Preliminary Proceedings.")  On October 30, 2006, Defendants filed

their "Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Subject Matter

Jurisdiction."  Also pending before the court is Plaintiffs' November 13, 2006 "Motion to

Dismiss Non-Diverse Defendants."  The court heard argument for both motions at a

hearing on November 15, 2006.[1]  The court has also reviewed additional briefing by

Plaintiffs and Defendants filed after the hearing.  For the reasons stated below, the court

_____

     [1]After the hearing date, the court received further briefing on Plaintiff's second
motion.

will grant in part and deny in part Defendants' motion to dismiss and grant Plaintiffs'

motion for a preliminary injunction.

## I. INTRODUCTION

Several interrelated parties are before the court. The Trusts, as the court will

refer to these Plaintiffs collectively, are organized in Ohio and bear the following names:

(1) George S. Hofmeister Family Trust Dated June 21, 1991 for Scott R. Hofmeister, (2)

George S. Hofmeister Family Trust Dated June 21, 1991 for Jamie S. Hofmeister, and

(3) George S. Hofmeister Family Trust Dated June 21, 1991 for Megan Hofmeister.

(Pls' Mot. at 4.) George Hofmeister, whom the Trusts occasionally retain to do work,

created the Trusts for the benefit of his children. (*Id.*) The Trusts, along with Plaintiff

Douglas Q. Holmes of Ohio in his capacity as the trustee, brought this action "to protect

their ownership interests in corporate entities currently controlled by the Defendants."

(*Id.*) According to Plaintiffs, Defendants Daniel Fuhrman ("Fuhrman") and William

Gruits ("Gruits") reside in Michigan and "control, directly or indirectly, the rest of the

Defendants in this action." (*Id.*)

Fuhrman, Gruits and the Trusts each own one third of FGH Capital, LLC ("FGH

Capital), who is not a party to this action. (*Id.*) Defendants FGH Industries, LLC, a

Michigan limited liability company, ("FGH-Michigan"), and FGH Industries, LLC, a

Delaware limited liability company, ("FGH-Delaware"), are identically named companies

that "serve as a holding company for specialized, niche-market manufacturing and

services companies." (*Id.* at 5.) The court will collectively refer to these Defendants as

"FGH."[2] Fuhrman and Gruits are the managers of FGH, which FGH Capital owns together with an Arizona trust named the Hansen Trust. (*Id.*)

Defendant Trans Industries of Indiana, Inc. ("Trans") is an Indiana corporation that manufactures machining and components for heavy trucks. (*Id.*) FGH is the majority owner of Trans, and the Trusts are minority owners. (*Id.*) Plaintiffs claim that "Trans is FGH's most valuable and important asset." (*Id.*) The Trusts, meanwhile, are majority owners of Soberay Machine & Equipment, Inc., ("Soberay"), which provides services related to heavy manufacturing equipment used in the rubber and plastic industries. (*Id.*) FGH is a minority owner of Soberay. (*Id.*) Plaintiffs contend that Soberay is out of business because Fuhrman and Gruits transferred all of its assets to SME Equipment, LLC, a Michigan limited liability company. (*Id.*) FGH is the exclusive owner of SME, which provided services akin to that of Soberay and which, Plaintiffs believe, is also out of business. (*Id.* at 5-6.)

Defendant Scovey, LLC ("Scovey") is located in Michigan, and Plaintiffs believe that Scovey is owned and operated by Gruits. (*Id.* at 6.) Scovey owns the building at 414 East Street in Rochester, Michigan, at which address Gruits, Fuhrman, FGH Capital, FGH, and SME all keep their offices. (*Id.*) Defendants Allegant Capital, LLC

---

[2]The court will use the nomenclature that Plaintiffs first offered in the course of motion practice. (9/29/06 Pls' Mot. for Prelim. Inj. Br., at 5.) Plaintiffs in their complaint first referred to FGH as "FGH Industries." (Compl. at ¶ 28.) Defendants subsequently designated FGH as "FGHI," (10/30/06 Defs' Mot. to Dismiss Br., at 5), and, in turn, Plaintiffs' began using FGHI, (11/8/06 Pls' Resp. at 4). The variability in the parties' names for FGH has the effect of creating confusion in the record, which does not assist the court in its decision-making process. The court requests that the parties formulate their pleadings in light of already filed pleadings, so that the parties may at the very least agree on important record designations.

3

("Allegant") and Acquisition & Strategy Advisory Partners, LLC ("ASAP") are also located here. (*Id.*) Plaintiff contends that Fuhrman founded and controls Allegant and ASAP. (*Id.*)

According to Plaintiff, "Fuhrman and Gruits have used their control of these companies to launder money for themselves, to engage in self-interested transaction, and to otherwise plunder FGH and FGH Capital at the expense of the Trusts." (*Id.*)

## II. BACKGROUND

### A. Plaintiffs' Complaint

Plaintiffs filed their complaint in federal district court on September 8, 2006, invoking the diversity jurisdiction of the court. (Pls' Compl. at ¶ 13.) Plaintiffs had earlier filed a complaint in state court on December 27, 2005, (Pls' Mot. at 16; Defs' Resp. Ex. 1), and obtained a partial grant of their motion for a preliminary injunction. (*Id.* at Ex. 33.) Plaintiffs point out that after several months of discovery the state court defendants alleged that FGH-Delaware was the real party in interest and that the state court had no jurisdiction because the "internal affairs doctrine" would prevent the state court from interfering with the internal affairs of an out-of-state corporation. (*Id.* at 17.)[3] Plaintiffs contend that they agreed to voluntarily dismiss the case and file it again elsewhere rather than litigate jurisdiction in state court, which might have entailed a lengthy appeal. (*Id.*) Plaintiffs claim that venue is appropriate in this court because a substantial part of the acts and omissions giving rise to their claims occurred in Michigan. (Compl. at ¶ 16.) The complaint makes the following allegations.

---

[3]The substance of Defendants' instant jurisdictional and internal affairs arguments, which are detailed below, is similar.

4

In the end of 2002, the Trusts, Fuhrman, and Gruits began to do business together and subsequently acquired interests in, or formed, FGH Capital, FGH, Trans and Soberay--which Plaintiffs refer to collectively as the "Commonly Owned Companies." (*Id.* at ¶¶ 17-18.)  These three parties, along with Trans, entered into the "Trans Purchase Agreement" in July 2003 to sell and purchase stock in Trans. (*Id.* at ¶ 22.)  In late 2003 and early 2004, the business relationship began to sour between Hofmeister and the Trusts on one hand and Fuhrman and Gruits on the other. (*Id.* at ¶ 32.)  Fuhrman and Gruits removed Hofmeister from his management position at Trans and "embark[ed] upon a systematic campaign to bleed the Commonly Owned Companies of their assets and capital, preventing the Trusts from receiving any distributions, and transferring the assets and capital of the Commonly Owned Companies to companies in which the Trusts have no interest." (*Id.* at ¶¶ 33-36, 39.)

In February 2004, about a month after acquiring control, Fuhrman and Gruits converted assets from Trans for their personal benefit by "extract[ing] exorbitant 'management fees'" while providing little if any value in return. (*Id.* at ¶¶ 41, 44-47.) Plaintiffs demanded that the management fees cease, but their demands remain unmet. (*Id.* at ¶ 48.)  Fuhrman and Gruits also caused the companies they control to pay overlapping rent for the same space in the building located at 414 East Street in Rochester. (*Id.* at ¶¶ 49-52.)  They also stole corporate opportunities from Plaintiffs, specifically with respect to the purchase of Federal Forge, a bankrupt Lansing-based company, and instead charged FGH for due diligence and other expenses for a transaction that did not benefit FGH in any way. (*Id.* at ¶¶ 53-59.)  Fuhrman and Gruits also engaged in self-dealing by spending $40,000 to lease computer equipment, loaning

5

$27,500 to themselves, and charging Trans $151,951.26 for attorneys' fees in the first four months of 2006 even though Trans was not a party to any lawsuit at this time. (*Id.* at ¶¶ 66-68.)

Based upon the above allegations, Plaintiffs have asserted counts[4] of (1) conversion, (2) aiding in the concealment of converted property, (3) minority oppression (two counts), (4) breach of fiduciary duty (two counts), (5) unjust enrichment, (6) breach of contract (two counts), (7) civil conspiracy, and (8) a claim for injunctive relief.

### B. Plaintiffs' Motion for Preliminary Injunction

In their motion, Plaintiffs contend that Defendants' continued unlawful conduct has led Trans to default on the bank loan that provides working capital to Trans. (Pls' Mot. at 16.) Plaintiffs allege that Fuhrman and Gruits, "[a]fter already running Soberay and SME out of business . . . appear well on their way to running Trans out of business as well." (*Id.*) They argue that "an injunction is now needed more than ever" and request that the court enjoin Fuhrman and Gruits "from participating in the management of FGH and/or Trans." (*Id.* at 18.) They further argue that the requirements for granting a preliminary injunction are met in this case. Plaintiffs assert that (1) they have a likelihood of success on the merits, (2) they will suffer irreparable harm absent an injunction, (3) granting the injunction will not cause substantial harm to others, and (4) the public interest will be served. Specifically, Plaintiffs argue that Trans, an Indiana corporation, may be run by its managers and a former owner who is now a consultant for Trans while Fuhrman and Gruits can focus their efforts on running their Michigan

---

[4]Each count is charged against different sets of Defendants, which the court need not detail for purposes of deciding the pending motions.

6

companies.  (*Id.* at 27.)  Defendants respond, arguing that 1) Plaintiffs are not likely to succeed on the merits, 2) there is no imminent risk of irreparable harm, 3) the grant of injunctive relief would seriously prejudice Defendants while its denial would not unduly prejudice Plaintiffs, and 4) Plaintiffs are seeking total, not preliminary relief.  (Defs' Resp. at 4.)

### C.  Defendants' Motion to Dismiss

Defendants' motion to dismiss raises the threshold question of jurisdiction. Defendants present several arguments contending that the court lacks subject matter jurisdiction over Plaintiffs' eleven counts.  First, Defendants argue that complete diversity of state citizenship is lacking for several counts because Defendant FGH Capital, by virtue of its one-third ownership by the Trusts, is therefore also a citizen of Ohio for jurisdictional purposes.  (Defs' Br. at 9-10.)  Defendants also contend that, in turn, because FGH Capital is a part owner of FGH (which consists of FGH-Michigan and FGH-Delaware), FGH is also an Ohio party, resulting in a lack of complete diversity with respect to claims over FGH and its parts.  (*Id.*)  Accordingly, Defendants argue that a number of counts lack complete diversity between the Plaintiffs (or the real party in interest) and Defendants.

Next, Defendants argue that pursuant to "internal affairs doctrine," as explained by the Michigan Supreme Court, a Michigan court, or a federal district court sitting in diversity, lacks subject matter jurisdiction over a claim seeking intervention in the internal affairs of a non-Michigan corporation, which in this case is Trans of Indiana.  (*Id.* at 11.)  Finally, Defendants contend that one count does not claim a sufficient amount in controversy and that two other counts are merely restatements of prior defective counts

7

that should be dismissed for the same reasons as the prior counts.  (*Id.* at 13.)

In their response, Plaintiffs concede that FGH Capital is a citizen of Ohio, as is FGH.  (Pls' Resp. at 4.)  They agree to dismiss Count III, which alleges minority oppression and is the only count brought solely against FGH.  (*Id.* at 5, n.5.)  For the other counts, however, Plaintiffs contend that FGH is not an indispensable party under Federal Rule of Civil Procedure 19 and therefore diversity jurisdiction may be created retroactively by dismissing only FGH from the case.  (*Id.* at 5-8.)  Plaintiffs further contend that FGH Capital is neither a party nor a real party in interest and therefore does not affect jurisdiction.  (*Id.* at 8-10.)  Next, Plaintiffs reject Defendants' internal affairs argument, contending that the doctrine is a consideration for purposes of venue but not a jurisdictional bar, (*id.* at 10-13), and arguing that Michigan is in any event the most convenient forum for both sides, (*id.* at 13-14.)  Finally, Plaintiffs argue that the amount in controversy is sufficient, particularly when claims are aggregated.  (*Id.* at 14-15.)

### D.  Plaintiffs' Motion to Dismiss Non-Diverse Parties

Consistent with its arguments as detailed above, Plaintiffs on November 13, 2006 filed an additional motion to dismiss non-diverse parties.  Defendants, consistent with their previous arguments, responded in opposition.  (11/22/06 Defs' Resp.)

### III.  STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a party may make a motion for dismissal based on lack of subject matter jurisdiction. A motion to dismiss pursuant to Rule 12(b)(1) may either attack the claim of jurisdiction on its face or it can

8

attack the factual basis of jurisdiction.  *See e.g. Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).  Here, Defendants' motion presents a facial challenge to jurisdiction over it.

Where the defendant mounts a facial attack on subject matter jurisdiction, the court must take the allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-722 (6th Cir. 1999).  The approach followed in reviewing such a facial attack, in which the court takes the allegations in the complaint as true, is therefore similar to that employed under 12(b)(6) motions to dismiss.  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).  However, in another critical respect motions under Rule 12(b)(1) differ from motions under Rule 12(b)(6).  When the defendant challenges subject matter jurisdiction through a motion to dismiss under 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over his claim.  *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).  "In reviewing a 12(b)(1) motion, the court may consider evidence outside of the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. *Id.*

9

## IV.  DISCUSSION

Because Defendants' motion to dismiss raises threshold issues of jurisdiction, the court will analyze this motion first before reaching the merits of Plaintiffs' motion for a preliminary injunction.  For the reasons stated below, the court will grant in part and deny in part Defendants' motion to dismiss and it will grant Plaintiffs' motion for a preliminary injunction.

### A.  Defendants' Motion to Dimiss

### 1.  Diversity Jurisdiction

Plaintiffs' complaint alleges federal subject matter jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332.  Courts have interpreted § 1332 to require complete diversity, meaning that no party may share citizenship with any opposing party.  *See e.g. Safeco Ins. Co. v. City of Whitehouse*, 36 F.3d 540, 545 (6th Cir. 1994).  Dismissal is appropriate if the parties lack complete diversity.  *Id.*  The court "must look beyond the nominal designation of the parties in the pleadings and should realign the parties according to their real interests in the dispute."  *Id.* (citing *Dawson v. Columbia Ave. Sav. Fund*, 197 U.S. 178, 180 (1905)).  Such realignment may create or destroy diversity of citizenship.  *Id.* (citations omitted).

The court will consider FGH Capital and FGH in turn and conclude that diversity jurisdiction is appropriate.  First, FGH Capital is not a party to the action and therefore does not impact the court's diversity jurisdiction.  To the extent that Defendants seem to argue that FGH Capital is in fact a real party in interest, the court rejects this argument.  Plaintiffs chose not to sue FGH Capital and are pursuing interests independent of those

10

of FGH Capital.  Plaintiffs' interests focus generally upon the assets of the Trusts, and not any particular property interest of FGH Capital.  Plaintiffs, in other words, did not bring suit to vindicate the rights of FGH Capital.  Furthermore, Plaintiffs' allegations of misconduct say little about the role of FGH Capital and therefore offer little support for considering it a potential defendant.  The allegations instead focus upon the alleged behavior of Defendants Fuhrman and Gruits, who purportedly used FGH Capital as a means to serve their own purposes.  Because the court is aware of no factual basis in the record for considering FGH Capital a real party in interest, this non-party will not be included in the case and will therefore not affect the court's diversity jurisdiction.

The closer question concerns Defendant FGH, which is a party to this suit who could potentially destroy diversity jurisdiction.  The court, however, is again persuaded that FGH is not central to Plaintiffs' theory of recovery.  The sole exception is Count III, the only count exclusively against FGH, which claims that FGH committed minority oppression.  But because Plaintiffs are willing to dismiss this count, which the court will accept, the court must consider whether Plaintiffs should be allowed to dismiss FGH from the counts where it is presented as a joint tortfeasor.  The court finds that Plaintiffs may dismiss FGH from the case.

Misjoinder is not a grounds for dismissal and the court may, upon a party's motion or its own initiative, add or drop a party "at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.  But the court may not drop an indispensable party, who is so identified by the following factors:

> 1) to what extent a judgment rendered in the [party's] absence might be prejudicial to [the party] or those already parties
> 2) the extent to which, by protective provisions in the judgment, by

11

the shaping of relief, or other measures, the prejudice can be
lessened or avoided
3) whether a judgment rendered in the [party's] absence will be
adequate
4) whether the plaintiff will have an adequate remedy if the action is
dismissed for nonjoinder

Fed. R. Civ. P. 19(b). Considering these factors, the court finds that FGH is not an

indispensable party to Plaintiffs' cause of action.

As discussed above, the central players among the Defendants are Fuhrman and

Gruits. Plaintiffs' allegations of misconduct focus on these individuals. Indeed, most of

the counts seek money damages against these individuals. Where FGH and its parts

are involved, that involvement is predicated upon the alleged control of Fuhrman and

Gruits. The pleadings, viewed in the light most favorable to Plaintiffs, support Plaintiffs'

theory that Fuhrman and Gruits are the actors causing the alleged harm, whereas FGH

is merely one of the tools used towards that end. The absence of FGH, therefore, will

not prejudice the other Defendants. The outcome of this case for Fuhrman, Gruits and

the other Defendants does not rise and fall with the presence or absence of FGH.

Plaintiffs, meanwhile, stand to suffer great prejudice if the case is dismissed and they

are left without an adequate forum with jurisdiction over Defendants.[5] Because Plaintiffs

in essence do not seek relief vis-a-vis FGH, a judgment rendered in FGH's absence will

be adequate. The court will therefore realign the parties to allow Plaintiffs to create

diversity jurisdiction by dismissing FGH from the action. Thus, the court will also grant

Plaintiffs' motion to dismiss non-diverse parties.

---

[5]Plaintiffs allege that "no State other than Michigan would have personal
jurisdiction over most of the corporate Defendants in this case, several of which are
organized and do all of their business in Michigan." (Pls' Resp. at 8.)

12

## 2.  Internal Affairs Doctrine

Defendants cite *Wojtczak v. American United Life Ins. Co.*, 292 N.W. 364 (Mich. 1940), for the proposition that this court, as a matter of jurisdiction, may not decide certain counts because it would entail intervention in the internal affairs of Trans, an Indiana corporation.  In *Wojtczak*, the plaintiff held an insurance policy and sued the Indiana corporate defendant "to restrain performance of a re-insurance management contract under which defendant reinsured and assumed [the plaintiff's original insurance policy.]"  *Id.* at 365.  The Michigan Supreme Court, in presenting the issue, stated that "[i]f the restraint sought undertakes to exercise control or management of the internal affairs of defendant, a foreign corporate, the courts of this State will not assume jurisdiction."  *Id.*  The court, holding that the plaintiff indeed sought such restraint, did not assume jurisdiction and held that "[w]hether the contract in question is ultra vires is to be determined by the courts of the State of Indiana."  *Id.* at 366.

Plaintiffs, meanwhile, cite *Lapides v. Doner*, 248 F. Supp. 883 (E.D. Mich. 1965), and argue that *Wojtczak* presents not a jurisdictional bar, but a consideration relevant to a motion for *forum non conveniens*.  The court finds this authority persuasive.  In *Lapides*, the plaintiffs sought a declaration that a meeting of an Ohio corporation's board of directors, along with all the resolutions that were passed, was null and void.  *Id.* at 885.  The resolutions included some corporate board elections and removals, which essentially meant that the plaintiffs were seeking control of the board of directors.  *See id.*  Judge Freeman interpreted *Wotczak* and concluded "that the rule in *Wojtczak* is a state rule of *forum non conveniens* . . ." and that federal courts in Michigan were not obligated under *Erie* doctrine to apply that rule in diversity cases.  *Id.* at 893.  "It appears

13

2:06-cv-13984-RHC-DAS   Doc # 34   Filed 12/15/06   Pg 14 of 22   Pg ID 620

that the Michigan Supreme Court recognized that it had jurisdiction in the sense of power to hear the case, but that it chose in its discretion not to assume jurisdiction for the reasons stated." *Id.* at 886.  While the federal district court was mindful that *Wojtczak* did not in so many words invoke the language of *forum non conveniens* analysis, *id.*, the district court concluded that the Michigan Supreme Court in effect undertook such an analysis, especially in light of the fact that the parties on appeal briefed the issue as such, *id. at* 887.  The district court therefore rejected the jurisdictional challenge and held that Michigan was the most convenient forum for the parties.  *Id.* at 894.  Other federal courts have also rejected the doctrine of internal affairs as a substantive rule of state law that would deprive a federal court of diversity jurisdiction.  *See e.g.  Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527 (1947); *Poe v. Marquette Cement Mfg Co.*, 376 F. Supp 1054 (D. Md 1974).

This court likewise rejects Defendants' argument that the internal affairs doctrine deprives the court of diversity jurisdiction over Plaintiffs' claims.  Moreover, to the extent that Defendants are instead appealing to the court's discretion under *forum non conveniens* doctrine, the court does not believe that Indiana or any other State would be a more convenient venue.  Indeed, Defendants articulated no compelling reasons why a court in Michigan would be an inconvenient venue or what other venue would make a compelling case for convenience.  Meanwhile, Plaintiffs allege that Defendants Fuhrman and Gruits, the directors of Trans, reside in Michigan and that, except for Trans, every corporate defendant is organized in Michigan.  Evidence, offices and bank accounts are also purportedly located in Michigan.  Under the circumstances, the court believes that Michigan is the most convenient forum for Plaintiffs' cause of action.

14

**3.  Amount in Controversy, Other Remaining Jurisdictional Arguments**

Defendants' remaining jurisdictional arguments are terse and unsupported by citation to authority.  Concerning the amount in controversy, Defendants only challenge Count VII and state that it is unclear how Plaintiffs' claim for $3,500 in monthly rent is to be divided among them.  But Plaintiffs respond that at least thirty-five such rent payments are at issue, for a total of $122,500, which is well above the jurisdictional limit of $75,000.  Furthermore, two or more plaintiffs may "unite to a single title or right in which they have a common and undivided interest ."  *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006).  The Trusts have brought their claims together without asserting separate claims for any individual plaintiff.  It is clear that the total amount in controversy of the Plaintiffs' claims is well above the jurisdictional limit.  28 U.S.C. § 1332(a).

Finally, Defendants contend that Counts X and XI merely restate prior counts and that the court lacks subject matter jurisdiction over them "for the same reasons and to the same degree as it does regarding the substantive claims discussed above."  (Defs' Br. at 13.)  For the reasons that the court rejected Defendants' jurisdictional challenges above, the court also rejects Defendants' arguments concerning Counts X and XI, which state separate claims for civil conspiracy and for injunctive relief.  The court now turns to the merits of Plaintiffs' motion for a preliminary restraining order.

### B.  Plaintiffs' Motion for a Preliminary Injunction

To decide Plaintiffs' request for a preliminary injunction, the court must consider the following factors: (1) Plaintiffs' likelihood of success, (2) whether Plaintiffs will suffer irreparable harm absent the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) the impact of an injunction on the public interest. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 380 (6th Cir. 2006). These are factors to be balanced, not conditions that each must be met.  *United States v. Edward Rose & Sons*, 384 F.3d 258, 260 (6th Cir. 2004).  In light of the relevant factors, the court will conclude that Plaintiffs' motion should be granted.

### 1.  Plaintiffs Have Demonstrated a Substantial Likelihood of Success

The first factor weighs most heavily in favor of Plaintiffs.  "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000). Plaintiffs' many allegations of self-dealing by, in particular, Defendants Fuhrman and Gruits, are striking.  Several of the allegations find support in Plaintiffs' citation to the record.  The balance sheets attached to Plaintiffs' motion indicate that after December 2003, when Fuhrman and Gruits became FGH's sole directors, FGH began paying substantial amounts in management fees to Fuhrman, Gruits, and companies they owned or controlled.  Previously, when Hofmeister was part of FGH's board, no such management fees were paid.

The management fees continued in 2005, with FGH paying out nearly $200,000 in management fees, about 97% of its income, to the same parties.  (12/31/05 FGH Income Statement, Pls' Ex. 22.)  Reasonable inferences further suggest that a $40,000

16

computer lease agreement and rental charges for multiple companies located in the same building bear the mark of more self-dealing by the Defendants. (Accounts Payable Check Register, Pls' Ex. 17; Michigan Dep't of Labor Printout, Pls' Ex. 18; Check Register, Pls' Ex. 20.) Plaintiffs have also shown that Trans loaned $27,500 to its officers this year and that only Fuhrman and Gruits are officers for Trans. (Trans Trial Balance, Pls' Ex. 21.) The record also contains evidence that a number of Defendants have been sued elsewhere and that Trans, which the Trusts believe is not a party to any suit, has paid over $150,000 in attorneys' fees in the first four months of 2006. (Trans Trial Balance, Pls' Ex. 31.) Finally, Plaintiffs allege that Defendants have caused financial ruin to companies in which the Trusts are invested and that, most recently, the bank loan from which Trans receives its working capital is now in default. (9/7/06 Notice of Default, Pls' Ex. 32.)

Having reviewed the record evidence before it, the court is persuaded that Plaintiffs have a substantial likelihood of prevailing on the merits. The court believes that Plaintiffs are likely to demonstrate that substantial self-dealing is afoot and that Defendants Fuhrman and Gruits are the principal offenders and beneficiaries. Furthermore, though Defendants do not have the burden of disproving Plaintiff's allegations, the court does note that Defendants focus their arguments on issues apart from the merits of Plaintiffs' allegations: jurisdiction, res judicata, and whether Plaintiffs claims are actually derivative shareholder claims that should fail due to some procedural defects. Apart from blanket denial, Defendants do not attempt to explain their alleged conduct or otherwise respond directly to Plaintiffs' allegations. Instead, Defendants interpose legal arguments that skirt the substance of Plaintiff's allegations and, in any

17

event, are not persuasive.[6]

Defendants' argument that Plaintiffs lack a substantial likelihood of success on the merits because the court lacks jurisdiction is rejected. The court has decided it does have jurisdiction. Defendants next contend that Plaintiffs' claims are barred by the doctrine of *res judicata* due to a dismissed state court action. This doctrine bars a second, subsequent action when (1) the first action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. *Adair v. Michigan*, 680 N.W.2d 386 (2004). Defendants' argument appears disingenuous. Plaintiffs present pleadings from the state court action show that, while their third-party complaint contained some important factual overlap, it was never decided on the merits. Indeed, Plaintiffs stipulated to dismiss their claims without prejudice, after Defendants objected to an earlier motion to consolidate the third-party claim. (Pls' Reply Br., Exs. A-H). There is thus an apparent inconsistency in Defendants' earlier position against consolidation and its current posture, which suggests that some claims really should have been brought in state court over its previous objections. The court doubts whether, based on the procedural history in that case, Plaintiffs could have resolved the same matter in the earlier litigation.

Finally, Defendants attempt unsuccessfully to recast Plaintiffs' complaint as a shareholder action for dividends from Trans. Defendants claim that, as a shareholder

---

[6]While the scheduling order of the court does limit Defendants' motion to dismiss to jurisdictional issues, no similar limitation applies to the response to Plaintiffs' motion for a preliminary injunction, where Defendants had free reign to raise whatever responses they deemed appropriate.

action, it should be dismissed for failure under Indiana law to verify and for not demanding corrective action by the corporation. This argument is defective because it ignores the real essence of Plaintiffs' complaint: that Defendants have wrested away control of important assets for their own benefit while depleting those assets of value that belongs to the Trusts. The complaint is seeking more than simple dividends or other shareholder benefits. Rather, the complaint asserts the Plaintiffs' rights as members of a limited liability company, along with redress for breaches of fiduciary duty, conversion, and other alleged wrongs.

### 2.  The Threat of Irreparable Harm Favors Neither Side

To demonstrate irreparable harm, Plaintiffs must show that without the injunction they "will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgem, Inc.,* 443 F.3d 540, 552 (6th Cir. 2006) (internal quotations omitted). The self-dealing detailed above has a cumulative impact that grows over time. As assets and value are depleted and financial obligations go unmet, there is the attendant consequence of insolvency. Indeed, Plaintiffs have presented a recent notice of default for an important and substantial loan of Trans. There is the looming possibility of financial ruin for Trans, which Plaintiffs contend is a unique asset for the Trusts, much like real estate, because "[n]o other company is like Trans." (Pls' Br. at 26.) Plaintiffs do not elaborate on this point. Defendants, on the other hand, argue that if Plaintiffs prove their case, money damages will suffice and therefore injunctive relief is not proper.

The court is not in a position to decide how this factor weighs. It is unclear to the court why Trans is so special to Plaintiffs and why removing it from the control of

19

Fuhrman and Gruits *immediately* is imperative.  At the same time, the court cannot evaluate Defendants' unsubstantiated claim that money damages would be sufficient or, by implication, recoverable. This factor favors neither side.  Specific findings regarding each of the four factors in not necessary if fewer factors are dispositive.  *See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997).

### 3. An Injunction Would Not Cause Substantial Harm to Defendants

Plaintiffs' arguments and representations persuade the court that an injunction would not unduly prejudice Defendants.  The record shows that Trans is not the exclusive domain of the Defendants' business activities.  Indeed, it is the lone asset located in Indiana while the bulk of Defendants' other business activities and operations appears centered in Michigan.  Furthermore, the court notes Plaintiffs' representations that other personnel at Trans--the general manager, a former general manager, and the former owner--could take over and manage the company while this litigation is resolved. Defendants have not argued that these individuals are unqualified, biased, or otherwise not fit to manage Trans.  Nor have Defendants indicated what portion of their business activity is related to Trans.  Under the circumstances, the court believes that Defendants would not suffer substantial harm from the grant of the injunction.[7]

### 4. An Injunction Will Serve the Public Interest

---

[7]Defendants argue that Plaintiffs' request for relief is not preliminary and therefore not appropriate because, if the court granted an injunction, the court would essentially grant Plaintiffs complete relief.  The court disagrees.  A preliminary injunction, by its very nature, does not exist in perpetuity.  Final relief can only come at the conclusion of court proceedings.

Generally, the public interest is served by preventing violations of the law. *See Chabad of Southern Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F.3d 427, 436 (6th Cir.2004).  Because Plaintiffs have demonstrated a substantial likelihood of success, the court believes that an injunction would serve the public interest.  The allegations of self-dealing before the court are serious and troubling.  Public confidence in orderly and fair commerce, as well as the effective administration of justice, depends in great part on detecting, where it indeed exists, this sort of misconduct and rectifying it swiftly.  This factor weighs in favor of granting an injunction.

## V.  CONCLUSION

IT IS ORDERED that Defendants' Motion to Dismiss [Dkt #22] is GRANTED IN PART AND DENIED IN PART.  Count III and all counts against FGH are DISMISSED.

IT IS FURTHER ORDERED that Plaintiffs' "Motion to Dismiss Non-Diverse Parties" is GRANTED.

IT IS FURTHER ORDERED that "Plaintiffs' Motion for Preliminary Injunction" [Dkt #5] is GRANTED.  A separate preliminary injunction order will issue.

 s/Robert H. Cleland                                    
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 15, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 15, 2006, by electronic and/or ordinary mail.

  s/Lisa Wagner

Case Manager and Deputy Clerk

(313) 234-5522