**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GEORGE S. HOFMEISTER FAMILY TRUST,
et al,

      Plaintiffs,

v.                                Case No. 06-CV-13984-DT

TRANS INDUSTRIES OF INDIANA, INC., et al,

      Defendants.
      _____/

**ORDER DENYING DEFENDANTS' "MOTION FOR ORDER
SUSPENDING/STAYING DECEMBER 15, 2006 PRELIMINARY INJUNCTION"**

Pending before the court is Defendants' December 21, 2006 motion to suspend or stay the preliminary injunction that the court granted to Plaintiffs. The matter has been fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Defendants' motion.

**I.  BACKGROUND**

This case involves, principally, a dispute over control of Trans, an asset that Plaintiffs, the Trusts, value highly as investors and a business that Defendants Daniel Fuhrman and William Gruits allegedly have been mismanaging through self-dealing. On November 15, 2006, the court heard argument regarding Plaintiffs' motion for a preliminary injunction. The court granted an injunction in a written opinion and order on December 15, 2006. Defendants have appealed that order and request that the court suspend or stay the injunction pursuant to Federal Rule of Civil Procedure 62(c).

## II. STANDARD

The court must in its discretion consider several factors in deciding whether it should stay an order pending appeal. Those factors include (1) whether the stay applicant has made a strong showing of likelihood of success on the merits, (2) whether the applicant will be irreparably harmed absent a stay, (3) whether grant of a stay will substantially injure other interested parties and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Because the court has already considered these factors when it granted the preliminary injunction, Defendants must in essence show a likelihood of reversal. *See e.g. Grutter v. Bolinger*, 137 F. Supp. 2d 874, 876 (E.D. Mich 2001), rev'd en banc on other grounds, 288 F.3d 732 (6th Cir. 2002), aff'd, 539 U.S. 982 (2003). The factors are not prerequisites to meet, but interrelated considerations for the court to balance. *Coal. to Defend Affirmative Action v. Granholm*, ___ N.W.2d ___; No. 06-2640 (6th Cir., December 29, 2006) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). In addition, specific findings regarding each of the four factors in not necessary if fewer factors are dispositive. *See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997).

## III. DISCUSSION

Generally, a federal district court is deprived of jurisdiction over an order once a notice of appeal of that order is filed. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (holding that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously"); *see also Welch v. Fritz*, 909 F.2d 1330, 1331 (6th Cir. 1990) (holding that after notice of appeal the district

court's subsequent denial of a motion for reconsideration would ordinarily be a "nullity"). There are, however, some longstanding exceptions. *See e.g. Newton v. Cons. Gas Co.*, 258 U.S. 165, 177 (1922) ("Undoubtedly, after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court.") (citing *Hovey v. McDonald*, 109 U.S. 150 (1883)).  But the trial court "may not finally adjudicate substantial rights directly involved in the appeal." *Id.* (citations omitted).  Under Federal Rule of Civil Procedure 62, this court has, while pending appeal, some continuing discretion over its preliminary injunction order.

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper fo the security of the rights of the adverse party.

Fed. R. Civ. P 62(c).

Courts have interpreted Rule 62(c) narrowly, but in varying degrees.  Two main interpretations prevail.  The first interprets the rule to mean that the district court's authority to suspend or modify an injunction pending appeal is limited to modifications that preserve the status quo between the parties already before the circuit court by virtue of the notice of appeal.[1]  At least three circuits have applied this rule.  *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 n.1 (9th Cir. 1984); *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962).  Other circuits have

---

[1] A grant of a preliminary injunction necessarily alters the status quo between the parties as it existed at the time a complaint is filed.  The relevant status quo for purposes of Rule 62(c) is thus the new status quo between the parties that the court's grant of the injunction creates.

3

gone beyond the status quo rule to allow, for example, substantive modification imposing more requirements in an injunction order pending appeal when the district court's action "preserve[s] the integrity of the proceeding in the court of appeals." *Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 464 (3rd Cir. 1989); *see also Bd. Of Educ. of St. Louis v. State of Missouri*, 936 F.2d 993, 996 (6th Cir. 1991). *Ortho* did state that Rule 62(c) does not grant district court "open-ended" authority to reconsider a preliminary injunction order. 887 F.2d at 464.

Citing each of the above five case, the Sixth Circuit has held that it "need not weigh in on this controversy . . . ." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 513 (6th Cir. 1992). *Basicomputer* involved an action to enforce noncompetition covenants and confidentiality agreements in employment contracts. *Id.* at 508. The district court modified its preliminary injunction order after it was appealed by shortening the time period when two parties could not compete. *Id.* at 513. Acknowledging that this modification altered the status quo, the Sixth Circuit avoided choosing between the two interpretations of Rule 62(c), holding that it would in any event vacate the district court's injunction because "it is based on an erroneous view of Ohio law." *Id.*

Similarly, the court in this case need not select among the differing interpretations of Rule 62(c). The relief Defendants seek is total reconsideration, which bears no resemblance to preserving the status quo or the more forgiving rule of preserving the integrity of the case for appellate proceedings. Accordingly, and for the reasons stated below, the court is not persuaded that Defendants' motion should be granted.

### A.  Likelihood of Prevailing on Appeal

For the reasons stated in the court's order denying Defendants' motion to dismiss, jurisdictional arguments are unlikely to succeed on appeal.  On the merits, the court is still faced with substantial evidence that shows significant self-dealing by Defendants.  The court will not recount that evidence in this order, other than to say that the additional evidence that the parties have submitted in their newest exhibits has not appreciably altered the court's determination.  The only new evidence that Defendants submit is a self-serving declaration by Mr. Gruits, (Defs' Ex. D), which is in large part contradicted by affidavits submitted by Plaintiffs, (Pls.' Exs. 12-13).[2]  To the extent that the injunction prevents Defendants from gathering and presenting more evidence on their behalf, the court will modify the injunction as needed and when needed, pending resolution of Defendants' interlocutory appeal.[3]

Regarding other new arguments that Defendants now present, the court sees little to no likelihood of success on the merits.  The Sixth Circuit will simply not hear any issues that Defendants failed to raise, and preserve for appeal, when this court considered Plaintiff's motion for a preliminary injunction.  *See e.g. U.S. v. $100,375 in U.S. Currency*, 70 F.3d 438, 441 (6th Cir. 1995).  In particular, as discussed below, Defendants' new claims of irreparable harm, which were plainly foreseeable, ring hollow, self-serving and exaggerated.

---

[2]The affidavit of George Hofmeister is equally self-serving, to the extent that his interests overlap with those of Plaintiffs.

[3]Defendants claim that Trans was not in default to its lender.  (Defs.' Br. at 6, 15-16.)  In order to allow Defendants to submit evidence supporting that contention, the court will, if appropriate, later consider modification of the injunction.  Plaintiffs do not oppose such a modification.  (Pls.' Br. at 15 n.4.)

5

Finally, Defendants' First Amendment argument, which basically attacks the injunction as an overbroad restraint on commercial speech, lacks merit because it proves too much. If such an expansive view of the First Amendment were accurate, then the court can imagine no form of injunctive relief that would not constitute prior restraint or other impermissible restriction of speech.

### B. Irreparable Harm

The second and third factors relevant to Defendants' motion for a stay require this court to weigh the relative irreparable harm that is at stake for the parties. The court again is not in a position to state with any certainty which party has the better argument. There is evidence on both sides. Defendants claim that significant business transactions hang in the balance that only Fuhrman and Gruits can complete and that it will be ruinous for Trans if the injunction is not stayed. Plaintiffs, meanwhile, argue that other managers can step in and operate Trans and that lifting the stay will only provide an opportunity for Defendants to engage in further misconduct.

The details of the purported impending doom for Defendants comes as news to this court, as Defendants earlier made no specific mention of important business that only Fuhrman and Gruits could conduct in early 2007. Because Defendants no doubt knew long ago about the deadlines and travel arrangements Defendants now present to the court, the court is unmoved and instead concludes that Defendants are attempting to create emergencies and attendant claims of irreparable harm where such do not exist. The court is reminded of the folk wisdom that can often be found on a sign under

the glass of the front counter at the neighborhood repair shop: "failure to plan on *your* part does not constitute an emergency on *our* part." [4]

Furthermore, Plaintiffs' response calls into question several of Defendants' claims of irreparable harm.  Without listing them exhaustively, it is apparent that the amount of business at stake, and the relative competence of other managers at Trans to pursue that business, are vigorous points of contention among the parties.  The court will not lift its injunction based solely on the word of a principal party that he and his partner and co-defendant ought to be the ones taking care of the business.  The court particularly will not open the door to Defendants on that basis given the evidence tending to show that Defendants take care of themselves above and before the interests of Plaintiffs, Trans and other entities used by Defendants for their apparent self-dealing.[5]  As such, Defendants have failed to demonstrate that they will suffer more irreparable harm under the injunction than Plaintiffs would suffer in absence of it.

### 3.  Public Interest

---

[4] That message is often found near another that features a cartoon character doubled over in laughter above the caption, "You want it WHEN?"  In seriousness, this court actually is sensitive to implications of the very short deadline a court must sometimes impose on attorneys.  It deserves mention here, therefore, that the court appreciates the diligent efforts of Plaintiffs' counsel to submit expedited briefing based upon the initial short timeline that Defendants' new cries of irreparable harm initially impressed upon the court.

[5] Defendants' reply brief includes exhibits that purport to bolster its claim of pending business transactions.  These exhibits, however, particularly those concerning communication with Volvo/Mack, do not corroborate the amount of business that the Gruits declaration asserts.  The cryptic e-mails among unidentified individuals and the unsigned contracts (which contain numerous empty fields) say nothing about the amount of potential business, or, for that matter, the assertion that only Fuhrman and Gruits can effect the transactions.

Defendants argue that the injunction interferes with the public interest in having Trans run by its duly elected officers and removed, if at all, by its shareholders. The court is aware of this public interest, but it pales in comparison to the public interest that is served by preventing violations of the law. *See Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F.3d 427, 436 (6th Cir. 2004). Because the new evidence before the court does not significantly counterbalance the previous evidence tending to show extensive self-dealing by Defendants, the court concludes that staying the injunction would not advance the public interest.

### D.  Security

Defendants claim that the court erred by not considering the issue of security. (Defs.' Br. at 11.) They cite to *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), which stated that "it was error for the judge, not necessarily to have failed to require a bond in any particular amount, but to have failed to exercise the discretion required of him by Rule 65(c) by expressly considering the question of requiring a bond." Indeed, Rule 65(c) prohibits issuance of a preliminary injunction "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Unlike in *Roth*, however, the court here did not fail to consider the issue of a security bond. The parties, who did not extensively brief the issue, discussed it at the hearing and the court asked counsel questions regarding what sum is appropriate, which elicited only tentative replies. (Tr. at 22-23, 30-31, Pls.' Ex. 2.)

The absence in the court's written opinion and order of any discussion regarding a security bond is an oversight that the court acknowledges. To correct the oversight and to both maintain the status quo of the parties and the integrity of the case on appeal, the court will set bond in a separate order.

### IV.  CONCLUSION

IT IS ORDERED that Defendants' "Motion for Order Suspending/Staying December 15, 2006 Preliminary Injunction" [Dkt #37] is DENIED.

A separate order setting an amount for a security bond will issue.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  January 12, 2007


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 12, 2007, by electronic and/or ordinary mail.

    S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522