# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GEORGE S. HOFMEISTER FAMILY TRUST, et al,

      Plaintiffs,

v.

      Case No. 06-CV-13984-DT

FGH INDUSTRIES, LLC, et al,

      Defendants.
      _____/

## AMENDED* ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION

Pending before the court is "Defendants Fuhrman and Gruits' Motion to Compel Arbitration," which was filed on June 21, 2007. Plaintiffs' response was filed on July 3, 2007. In their motion, Defendants request an order requiring the parties to arbitrate Counts IV, VI and VIII of the Plaintiffs' complaint. The issue has been fully briefed by the parties and the court has held a hearing on the matter on September 5, 2007.[1] For the reasons stated below, Defendants' motion will be granted in part and denied in part.

---

    * The court enters this amended order to correct a clerical error that appeared in the last full paragraph on page 7 of the court's September 26, 2007 opinion and order. The sentence in that paragraph beginning with "Although the arbitration clause..." is replaced herein by a sentence beginning with "Admittedly, the arbitration clause...." In substance and effect, the court's opinion and order is unchanged.

    [1] Case law in both the United States Supreme Court and the Court of Appeals for the Sixth Circuit establish that a hearing is required before a district court may enforce an arbitration agreement. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005); *see also* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

## I. BACKGROUND[2]

Plaintiffs originally filed a complaint in state court on October 21, 2005. (Pls.' Mot. at 5; Pls.' Ex. 3.) Plaintiffs contend that they agreed to voluntarily dismiss the case and file it again elsewhere rather than litigate jurisdiction in state court, which might have entailed a lengthy appeal. (*Id.* at 7.) Plaintiffs filed their complaint in federal court on September 8, 2006, invoking the diversity jurisdiction of the court. (Compl. at ¶ 13.) The complaint alleges eleven counts against Defendants. (*Id.* at ¶¶ 70-132.)

On October 6, 2006, the court entered a consent order permitting an extension of time to answer the complaint or take other action until October 30, 2006. (10/6/06 Order.) Thereafter, the court entertained multiple motions, which resulted in the dismissal of several claims, dismissal of non-diverse defendants and entry of a preliminary injunction. (12/15/06 Order.) During the pendency of these motions (and other motions related to the preliminary injunction granted by this court), Defendants were not required to file an answer to the complaint.

Defendants filed their answer to the allegations in the complaint on January 16, 2007. In their answer, Defendants put forth eighteen affirmative defenses, none of which asserted a contractual right to submit the disputes to arbitration. (Answer at 26-28.) During the two months that followed, Defendants filed additional motions, which resulted in an order dismissing several more of the Plaintiffs' claims. (4/12/07 Order.) Plaintiffs' "Motion for Summary Judgment Regarding Count VIII of Their Complaint" is still pending before the court.

---

[2]Much of the factual background is set forth in previous orders and is not central to the issue before the court.

The instant motion, filed on June 21, 2007, seeks an order compelling the parties to arbitrate Counts IV, VI and VIII of Plaintiffs' complaint "in accordance with the parties' agreement to arbitrate as set for [sic] in the Recapitalization Agreement." (Defs.' Mot. at 1.) Section 5.14 of the Recapitalization Agreement states that "[a]ny and all disputes, controversies or claims arising out of or related in any way to this Agreement or any of the Attendant Documents shall be resolved by way of arbitration, as provided in this Section 5.14; provided, however, that a party may seek a preliminary injunction or other provisional judicial relief." (Defs.' Mot. at 1; Agreement at 12, Defs.' Ex. A.)

## II. STANDARD

The Federal Arbitration Act ("FAA") provides that arbitration clauses contained in commercial contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity." 9 U.S.C. § 2. "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Cone Mem'l Hosp.*, 460 U.S. at 24; *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392-93 (6th Cir. 2003) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984)). If a district court determines that a claim is within the scope of the arbitration clause in question, it is required to stay the proceedings "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In order to compel the parties to arbitrate a claim, the district court must conduct a hearing, and:

> upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . If the making of the arbitration agreement or the

3

failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. "Under this statutory scheme, the district court must make four threshold determinations before compelling arbitration:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."

*Glazer*, 394 F.3d at 451 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). If any doubts remain regarding the arbitrability of a claim, they must be resolved in favor of arbitration. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) (citing *Fazio*, 340 F.3d at 392).

## III. DISCUSSION

### A. The Parties Agreed to Arbitration

Although Plaintiffs insist that Defendants have waived any right to demand arbitration, the court must first determine that such a right existed. *Stout*, 228 F.3d at 714 ("when asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue"). If Defendants ever had a right to demand that Counts IV, VI and VIII of the Plaintiffs' complaint be arbitrated, that right arose by mutual agreement to be bound by the arbitration clause contained at Section 5.14 of the Recapitalization Agreement. If the court determines that the parties have agreed to arbitrate their disputes and the

4

arbitration agreement is otherwise valid, then the court must compel arbitration. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

The parties do not dispute that they voluntarily entered into the Recapitalization Agreement. (Defs.' Br. at 5.) Nor do they dispute that the arbitration clause was valid and enforceable at the time they bound themselves to the Recapitalization Agreement. Plaintiffs do not take issue with the validity of the arbitration agreement. In fact, in their brief Plaintiffs concede that Count VIII would be an arbitrable issue if not for Defendants' alleged waiver. (Pls.' Br. at 14.) At the time the parties entered into the Recapitalization Agreement, Defendants had a right to demand arbitration of "[a]ny and all disputes, controversies or claims arising out of or related in any way to [the Recapitalization Agreement] or any Attendant Documents." (Defs.' Mot. at 1; Agreement at 12, Defs.' Ex. A.) An earlier clause in the Recapitalization Agreement defines Attendant Documents as "all of the other agreements and documents contemplated by this [Recapitalization] Agreement . . . ." (*Id.*)

### B. Counts IV, VI and VIII Are Within the Scope of the Arbitration Agreement

Before the court may compel arbitration of Counts IV, VI and VIII, the court must conclude that the disputed issues are within the scope of the arbitration agreement. *Stout*, 228 F.3d at 714. As noted above, there is a general presumption in favor of arbitrability. *Highlands Wellmont*, 350 F.3d at 573. Furthermore, this presumption controls "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Glazer*, 394 F.3d at 450 (quoting *Highlands Wellmont*, 350 F.3d at 576-77). Where the arbitration clause in question is broadly constructed, "only an express provision excluding a specific dispute,

5

or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Id.*

Because Plaintiffs have conceded that Count VIII is within the scope of the arbitration clause, the court must address only whether Counts IV and VI are arbitrable issues. "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio,* 340 F.3d at 395.

Assuming *arguendo* that the relationship between Plaintiffs and Defendants are fiduciary in nature, Count IV claims that:

> [Defendants] have violated and continue to violate their fiduciary duties to Trans and its shareholders by:
>
> a. Removing Mr. Hofmeister from the Board of Directors of Trans in order to gain control of Trans and convert the Converted Assets, and continuing to exclude Mr. Hofmeister and the Trusts from the governance of Trans, despite the fact that this exclusion is not in the best interest of Trans or its shareholder;
>
> b. Causing Trans to cease making distributions to the Trusts as required under the [Recapitalization Agreement], and to continue to breach the Agreement by failing to make required distributions;
>
> c. Taking compensation in the form of the Converted Fees from Trans in an amount that was and continues to be exorbitant and unreasonable in violation of MCL 450.1545(a)(4);
>
> d. Engaging in self-interested transactions that are not fair to Trans, carrying out these interested transactions in secret, and failing to disclose to and seek approval for these transactions from a disinterested party as required by law,
>
> e. Using Trans to pay for personal expenses, including travel, personal business opportunities and attorneys' fees, and

     f. Other breaches that may be discovered.

(Compl. at ¶ 91.)  Defendants' contention is that by including within paragraph 91 allegations that Defendants violated their fiduciary duty to Plaintiffs by ceasing to make "distributions to the Trusts as required under the [Recapitalization Agreement]," the claim for breach of fiduciary duty is transformed into an arbitrable issue, rather than an independent claim that may be litigated.  (Defs.' Br. at 5-6.)  Plaintiffs, however, point out that Defendants' "argument ignores the fact that [Count IV] would exist without these allegations of their non-payment of distributions." (Pls.' Br. at 14.)  Plaintiffs' allegation in paragraph 91 "is just one fact of many other facts alleged that would prove that they have breached their fiduciary duties to Trans and its shareholders."  (*Id.*)

  While the court is persuaded that Plaintiffs' claim of breach of fiduciary duty could be maintained without reference to the Recapitalization Agreement, the inquiry does not end there.  The scope of the arbitration agreement goes beyond the Recapitalization Agreement to all documents contemplated by that Agreement - the Attendant Documents.  The remaining allegations in Count IV depend upon alleged breaches of fiduciary duties.  Those duties, in turn, arise from the Attendant Documents, as Plaintiffs absent those documents would otherwise have no legal relationship with Defendants Fuhrman and Gruits that would give rise to claims of breach of fiduciary duty.  Given the strong federal policy in favor of arbitration and the relatively broad scope of the parties arbitration clause, the court cannot conclude that Count IV is "likely outside the scope of the arbitration." *Fazio*, 340 F.3d at 395. Admittedly, the arbitration clause is quite broad and there is no explicit provision excluding Count IV from the arbitration requirement.  But because only *unrelated* allegations of wrongdoing by a fiduciary provide "the most

7

forceful evidence of a purpose to exclude the claim from arbitration," *Glazer*, 394 F.3d at 450, the court cannot conclude the same in this case, where the alleged wrongdoing clearly relates to the Attendant Documents contemplated by the Recapitalization Agreement and, specifically, the arbitration clause.

Count VI presents the same question. Plaintiffs claim in Count VI that:

> [Defendants] have carried out their illegal and wrongful plan to oppress the Trusts by doing the following:
>
> a. causing FGH Industries (which is under the control of FGH Capital) to oppress the Trusts' minority interest in Trans as described in paragraph 89;
>
> b. causing Trans to cease making distributions to the Trusts as required under the [Recapitalization Agreement];
>
> c. [dismissed pursuant to 04/12/07 Order];
>
> d. failing to cause FGH Capital and FGH Industries to make distributions to the Trusts; and
>
> e. other actions that may be discovered.

(Compl. at ¶ 103.) Defendants' argument is essentially identical to that made in favor of compelling arbitration of Count IV. Therefore, the court employs the same analysis and evaluates whether "an action could be maintained without reference to the contract or relationship at issue." *Fazio*, 340 F.3d at 395.

Plaintiffs again argue that "Plaintiffs' allegation that [Defendants] failed to make distributions as required by the [Recapitalization Agreement] is just one fact of many other facts alleged that would prove that they have breached their fiduciary duties to Trans and its shareholders." (Pls.' Br. at 14.) This argument is also not persuasive with respect to Count VI. Paragraphs 103(b) & (d), the two most substantive averments

8

contained in paragraph 103, allege failure to make distributions to the Trusts as required by the Recapitalization Agreement. Paragraph 103(a) consists only of vague allegations incorporating paragraphs 1 through 88.[3] The remaining averment, paragraph 103(e), contains only boilerplate language devoid of substance. As such, Count VI rises and falls with allegations of failure to make disbursements, which fall squarely within the purview of the Recapitalization Agreement, whatever the scope of the Attendant Documents. The court concludes that, absent paragraphs 103(b) and 103(d), Count VI would not sufficiently state a claim that would fall outside of the parties' agreement to arbitrate.

Two additional considerations support this conclusion. Most importantly, as noted above, there is a strong presumption in favor of arbitration and any doubts as to the arbitrability of a claim must be resolved in favor of arbitration. *Highlands Wellmont*, 350 F.3d at 573. Even if the court were not convinced that, absent those allegations referring to the Recapitalization Agreement, the claim could not be maintained, the federal policy favoring arbitration would likely overcome the vague nature of the remaining allegations. Second, "any ambiguity in the contract or doubts as to the *parties' intentions* should be resolved in favor of arbitration." *Great Earth Cos., Inc.*, 288 F.3d at 889 (quoting *Stout*, 228 F.3d at 714) (emphasis added). Section 5.14 of the Recapitalization Agreement stipulates that "[t]he parties acknowledge that it is their intent to expedite the resolution of the dispute, controversy or claim in question, and that the Arbitrators shall schedule the timing of the hearing consistent with that intent."

---

[3]Paragraph 103(a) refers to paragraph 89 contained within Count IV of the complaint, which merely incorporates the allegations contained in paragraphs 1 through 88.

9

(Agreement at 12, Defs.' Ex. A.)  This language makes it clear that the parties intended to expedite the resolution of disputes arising of or relating to the Recapitalization Agreement through arbitration.  Plaintiffs' efforts to litigate as many claims as possible in federal court is inconsistent with this intention.

### C. Defendants Did Not Waive Their Right to Demand Arbitration

Plaintiffs make three arguments in support of their contention that Defendants have waived their right to demand arbitration: by (1) actively participating in the state court action and by taking actions inconsistent with demanding arbitration, (2) actively litigating after the federal court action had commenced and (3) failing to compel arbitration earlier.  (Pls.' Br. at 11-13.)

In order to adequately address Plaintiffs' arguments, the court must first determine whether state or federal law provides the proper standard for reviewing an alleged waiver of an arbitration agreement within the coverage of the FAA.  Section 5.3 of the Recapitalization Agreement states that, "[t]his agreement has been executed in, and shall be construed and enforced in accordance with the laws of, the State of Michigan without regard to the conflicts of law principles thereof."  (Defs.' Ex. A at 10.)  However, "even the inclusion in the contract of a general choice-of-law clause does not require application of state law to arbitrability issues, unless it is clear that the parties intended state arbitration law to apply on a particular issue."  *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995)).  The issue here is whether the right to enforce the arbitration clause has been waived.  Article 5.8 of the Agreement states the following:

> No party shall be deemed to have waived compliance by any other party
> with any provision of this Agreement unless such waiver is in writing, and
> the failure of any party at any time to enforce any of the provisions of this
> Agreement shall in no way be construed as a waiver of such provisions
> and shall not affect the rights of any party thereafter to enforce such
> provisions in accordance with their terms.

(Agreement at 11, Defs.' Ex. A.)  The record is void of any written waiver of the arbitration agreement by Defendants.  The court does not accept Plaintiff's argument, advanced at the hearing, that the filing of a suit in state court by Defendants constitutes a written waiver of the arbitration clause.

Further, in the context of this case, the court concludes that the FAA preempts state law regarding arbitration.[4]  *Southland Corp.*, 465 U.S. at 10-11.  "[A]n agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon."  *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2003) (quoting *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973)).  However, waiver of the right to arbitrate claims within the scope of an arbitration agreement is not to be lightly inferred.  *Highlands Wellmont*, 350 F.3d at 573 (citing *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003)).  "A party may waive the right by delaying its assertion to such an extent that the opposing party incurs actual prejudice."  *Gen. Star Nat'l Ins. Co.*, 289 F.3d at 438 (citing *Doctor's Assocs., Inc.*, 107 F.3d at 131).  Additionally, other courts have held that "[a] party may waive its right to insist on arbitration if the party 'so substantially utilizes

---

[4] Plaintiffs' reliance on *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995), in support of their assertion that "Michigan law applies to determine if the [Defendants] have waived their right to seek arbitration," is misplaced.  (Pls.' Br. at 10.) The *Dobson* Court's discussion is limited to the invalidation of arbitration clauses, not the waiver of admittedly valid arbitration clauses.

the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" *Microstrategy, Inc.*, 268 F.3d at 249 (quoting *Maxum Founds., v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). "[D]elay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Id. (*citation omitted). However, any doubts regarding the arbitrability of a dispute should be resolved in favor of arbitration, even when assessing an allegation of waiver. *Cone Mem'l Hosp.*, 460 U.S. at 24-25. Therefore, with respect to all three of Plaintiffs' arguments, the question to be answered is "whether the party objecting to arbitration has suffered *actual prejudice*." *Microstrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987)) (emphasis added).

     Plaintiffs' first argument would have this court take into consideration litigation activity that took place in a prior state court action. Plaintiffs argue that Defendants acted inconsistently with any right to arbitrate during the state court proceeding by filing a counter-claim, filing motions and serving discovery requests upon Plaintiffs. (Pls.' Br. at 11.) However, Plaintiffs acknowledge that Defendants did assert their right to arbitrate in both their answer to the complaint and their answer to the amended complaint. (Pls.' Br. at 5-6.) Furthermore, Plaintiffs do not draw the court's attention to any binding precedent that would compel this court to infer waiver from Defendants' participation in litigation activity in a prior proceeding that resulted in no judgment on the merits. Neither party identifies the nature of the motions entertained by the state court in that proceeding or the extent to which those issues were litigated before the parties voluntarily dismissed the suit. Nor do the parties provide the court with any indication of

the attendant cost of such litigation activity.  Additionally, the court finds it significant that the parties agreed in the Recapitalization Agreement that, should any dispute go to arbitration, the parties would be entitled to "reasonable levels of discovery."[5] (Agreement at 12, Pls.' Ex. A.)  It is likely that Defendants would have obtained the same information in an arbitration proceeding, thereby mitigating any claim of actual prejudice.  See *Microstrategy, Inc.*, 268 F.3d at 251.  In light of the strong federal policy in favor of enforcing arbitration agreements, the court finds that the litigation activity conducted in the state court action is insufficient to warrant an inference of waiver.

Plaintiffs also attempt, in part, to reargue whether the delay and litigation activity associated with the state court action resulted in waiver.  Those arguments have already been addressed, and there is no need for the court to revisit them.

The thrust of Plaintiffs' remaining arguments is that delay and litigation activity conducted during this federal court action have resulted in actual prejudice to Plaintiffs.  Plaintiffs argue that "[Defendants] ask for this relief after they have litigated in this Court for almost 10 months, filing and responding to pleadings and motions, participating in conferences with this Court, all without a mention of their alleged right to arbitrate."  (Pls.' Br. at 12.)  Additionally, Plaintiffs contend that, "[i]n the intervening time, the Plaintiffs have born [sic] the expense of litigating the . . . Federal Court Action."  (Pls.' Br. at 13.)  These arguments are not persuasive.

---

[5]Section 5.14 of the Recapitalization Agreement provides that, "[i]n any such arbitration proceeding, the Arbitration Parties shall be entitled to reasonable levels of discovery in accordance with the Federal Rules of Civil Procedure."  (Agreement at 12, Pls.' Ex. A.)

13

Upon review of the docket, the court notes that this suit was filed in federal court on September 8, 2006 and the pending motion to compel was filed on June 21, 2007. During the intervening year, Defendants have filed six motions. Defendants' motions included:

1. Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction [Dkt # 22];

2. Motion for Order Suspending/Staying December 15, 2007 Preliminary Injunction [Dkt # 37];

3. Defendants' Motion to Dismiss Counts I and II of Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) [Dkt # 54];

4. Defendants' Motion to Dismiss Count VI of Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) [Dkt # 55];

5. Defendants' Motion to Dismiss Count VII Complaint Pursuant to Fed.R.Civ.P. 56 and 12(b)(6) [Dkt # 56]; and

6. Defendants Fuhrman and Gruits' Motion to Compel Arbitration [Dkt # 91].

All but one of Defendants' motions seek to eliminate disputes between the parties either by dismissal at an early stage of the proceeding or by resolution at the agreed-upon forum. Plaintiffs, on the other hand, chose to file in federal court despite Defendants' prior assertions that Plaintiffs' claims were barred by an agreement to arbitrate. (Pls.' Br. at 5-6.) Since initiating suit in federal court, Plaintiffs have filed no less than fifteen motions, many of which have been unrelated to the substance of the complaint, and have been resolved at an early stage in the proceedings. The vast majority of the motions filed by both sides do not relate to the counts potentially subject to arbitration. The Sixth Circuit has recognized that "waiver may not be inferred from the fact that a party does not rely exclusively on the arbitration provisions of the contract, but attempts

to meet all issues raised in litigation between it and another party to the agreement." *Germany*, 477 F.2d at 547 (citing *Gen. Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924 (5th Cir. 1970)).

It appears that Defendants have attempted to minimize the number of counts that need to be litigated in this court or, alternatively, submitted to arbitration, through the use of pretrial motions. Only after these initial motions did Defendants file the instant motion to compel arbitration. Moreover, Defendants do not seek to compel arbitration of all counts, but only those they assert are arbitrable. At the very least, an equal part of the delay and expense involved in this case appears to be a result of the extent to which Plaintiffs have chosen to engage in motion practice. The court cannot hold Defendants responsible for the entirety of the delay and expense. Moreover, there is no evidence that the delay involved in Defendants' attempt to narrow the scope of the lawsuit has caused any actual prejudice to Plaintiffs. *Gen. Star Nat'l Ins. Co.*, 289 F.3d at 438 (citing *Doctor's Assocs., Inc.*, 107 F.3d at 131). In consideration of the strong preference in favor of arbitration and against waiver, the court cannot infer waiver based upon the parties' conduct at this stage of their dispute.

### D. The Complaint Does Not Assert any Federal Statutory Claims

The court agrees with Defendants that "Plaintiffs' complaint does not allege the violation of any Federal [sic] statutory claims." (Defs.' Br. at 4.) Therefore, the court need not consider whether Congress intended any of Plaintiffs' claims to be nonarbitrable. *Stout*, 228 F.3d at 714.

### E. The Remaining Claims Should Not Be Stayed Pending Arbitration

The FAA mandates that, after conducting a hearing and "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Therefore, the court is required to compel arbitration of Counts IV, VI and VIII, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

Because the court finds that the parties entered into a valid arbitration agreement, Counts IV, VI and VIII are within the scope of the agreement and Defendants did not waive their rights under the agreement, the parties will be directed to proceed to arbitration on these claims. The only question left for the court to address is whether to stay the remainder of the proceedings pending arbitration. *Stout*, 228 F.3d at 714. Defendants contend that because "the Recapitalization Agreement and the parties' performance there under [sic] is entwined in several of Plaintiffs' claims," it is appropriate for this court to stay the remaining proceedings pending resolution of Counts IV, VI and VIII. (Defs.' Br. at 6.)

The court is not inclined to agree. The factual and legal questions raised by the arbitrable Counts bear little relation to those arising out of the remaining[6] state law claims. The remaining claims, as they appear to the court, are the following:

(1) Aiding in the Concealment of Converted Property (Count II)

---

[6]Prior motion practice has disposed of several Counts in Plaintiffs' complaint.

(2) Breach of Fiduciary Duty to Trusts (Count V)

(3) Unjust Enrichment (Count VII)

(4) Breach of Contract for Failure to Pay Management Fees (Count IX)

(5) Civil Conspiracy (Count X)

(6) Injunctive Relief (Count XI)

Those claims may be resolved independently by this court without awaiting the results of arbitration. The arbitrable Counts concern, in the main, rights and duties pertaining to the management of Trans whereas the other Counts go beyond Trans to matters between the Plaintiffs and Defendants that do not directly implicate the operation of Trans.[7] Further, even if all of Plaintiffs' claims involved similar factual and legal questions, "arbitration proceedings [would] not necessarily have a preclusive effect on subsequent federal-court proceedings." *Dean Witter Reynolds, Inc.*, 470 U.S. at 223. Furthermore, the court observes that the remaining claims are not so "entwined" as to have prompted Defendants to move this court to compel arbitration of those claims as well. Therefore, the court will compel arbitration of Counts IV, VI and VIII and proceed to resolve the Plaintiffs' remaining claims without staying the proceedings in this court.

## IV. CONCLUSION

IT IS ORDERED that "Defendants Fuhrman and Gruits' Motion to Compel Arbitration" [Dkt # 91] is GRANTED IN PART AND DENIED IN PART. The motion is

---

[7]At the same time, to the extent that the remaining claims mention Trans or implicate its operation, they may proceed in this court even though such arrangement might mean "the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc.*, 470 U.S. at 217.

17

GRANTED as it pertains to Counts IV, VI and VIII of Plaintiffs' complaint and DENIED in its request for a stay of proceedings.

                                                  s/Robert H. Cleland
                                                  ROBERT H. CLELAND
                                                  UNITED STATES DISTRICT JUDGE

Dated: October 12, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 12, 2007, by electronic and/or ordinary mail.

                                                  s/Lisa Wagner
                                                  Case Manager and Deputy Clerk
                                                  (313) 234-5522