**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GEORGE S. HOFMESITER FAMILY TRUST
DATED JUNE 21, 1991, et al.,

       Plaintiffs,

                                      Case No. 06-CV-13984-DT

v.

FGH INDUSTRIES, LLC, et al.,

       Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS
GRUITS AND FUHRMAN'S "MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF AMHERST PARTNERS, LLC"**

Pending before the court is Defendants William Gruits and Daniel Fuhrman's

"Motion In Limine to Exclude the Testimony of Amherst Partners, LLC."  The matter is

fully briefed and the court concludes that a hearing is not necessary.  *See* E.D. Mich. LR

7.1(e)(2).  For the reasons stated below, the court will deny the motion.

**A.  STANDARD**

Federal Rule of Evidence 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of
> fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the testimony is
> the product of reliable principles and methods, and (3) the witness has
> applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* the Supreme Court held that, when

faced with a proffer of expert scientific testimony, the trial judge is assigned "the task of

ensuring that an expert's testimony both rests on a reliable foundation and is relevant to

the task at hand." 509 U.S. 579, 580 (1993). This ruling was later interpreted by the Court to apply to all expert testimony, not only scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

The party proffering the expert bears the burden of persuading the trial court that the expert has specialized knowledge that will aid the fact finder in understanding the evidence or determining a fact at issue. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). The trial court has wide discretion when determining whether to admit or exclude opinion testimony. *United States v. Paris*, 243 F.3d 286, 288 (6th Cir. 2001).

Expert testimony on ultimate issues for the trier of fact is not *per se* inadmissible, but the court has latitude to restrict testimony that is not helpful to jurors. Fed. R. Evid. 704; *United State v. Sheffey*, 57 F.3d 1419, 1425 (6th Cir. 1995); *Shahid v. City of Detroit*, 889 F.2d 1543, 1547-48 (6th Cir. 1989) (exclusion of expert testimony is not proper if expert's opinion on the ultimate issue amounts to a legal conclusion). Expert opinions should not be admitted if they merely tell the jury what result to reach. *Woods v. Lecureux,* 110 F.3d 1215, 1220 (6th Cir. 1997) ("It is, therefore, apparent that testimony offering nothing more than a legal conclusion--i.e, testimony that does little more than tell the jury what result to reach--is properly excludable under the Rules.").

### III. DISCUSSION

The individual Defendants challenge the expert report of Scott Eisenberg, managing director and co-founder of Amherst Partners, LLC. Defendants do not contest the expert qualifications of Eisenberg, a certified public accountant with over twenty-four years of experience in the industry. (2/15/08 Report at 1, 5-6, Defs.' Ex. A,

Pls.' Ex. A.)  Rather, Defendants raise Eisenberg's methodology.  Defendants contend

that he inappropriately:

> (1) assessed the relative credibility of two witnesses regarding the reliability of accounting records maintained by Trans Industries of Indiana, Inc. ("Trans"),

> (2) opined on the appropriateness of certain business practices by Trans "without regard to any contractual or other identified standard" and

> (3) assessed whether certain contractual management fees were excessive, also "without regard to any contractual or other identified standard.

(Defs.' Br. at 4.)  Defendants contend that Eisenberg merely reviewed documents and

placed himself in the position of the jury, which is inappropriate.  (*Id.* at 8-9).  Plaintiffs

counter that Eisenberg went beyond the documents and also relied upon his education

and years of experience with middle market companies similar to Trans.  (Pls.' Br. at 8.)

Plaintiffs further argue that he refrained from making legal conclusions about breach of

fiduciary duty, breach of contract or conversion and simply rebutted claims that Trans's

internal financial statements lacked accuracy.  (*Id.*)

Plaintiffs' arguments are more persuasive.  With respect to the accuracy of

Trans's financial records, Eisenberg bases his conclusion on the fact that, after an audit,

"the numbers of adjustments proposed by the auditors were minimal and very

reasonable in nature."  (2/15/08 Report at 2, Defs.' Ex. A, Pls.' Ex. A.)  The court finds

no methodological defect in Eisenberg's reliance on this fact when he concluded that

Trans's pre-audit financial statements were in good order.

Concerning business practices, Eisenberg gave specific examples of requests for

reimbursement that lacked adequate support.  Examples include (1) requesting

reimbursements that lacked receipts or invoices, (2) authorizing a $20,000 loan without

a signed loan agreement or payback schedule included in the authorization and (3)

failing to record an annual travel log as required by the IRS. (*Id.*) The court does not

expect a typical juror to know all of these generally accepted principles of accounting.

Eisenberg's testimony regarding business expenses would therefore be helpful in

assisting the jury.

Finally, Eisenberg's analysis of management fees and expenses suffers no

fundamental defect. He calculated the fees as a percentage of sales for 2003 through

2006, finding that the percentage fluctuated in those four years from 0.63%[1] to 5.3% to

4.3% to 13.29%, respectively. (*Id.* at 2-3.) Eisenberg also noted that at the end of 2004

Trans recorded a "bottom line profit" of about $28,000 and management fees of over

$121,000 (which grew to over $212,000 according to the audited statement for the

same year). (*Id.* at 3.) Based upon this and other financial information not summarized

here, Eisenberg concluded that the management fees of Defendants Fuhrman and

Gruits "were fairly significant based on the size of the company." (*Id.*) Eisenberg further

concluded that "the management fees and expenses start to become excessive in 2004

and continued through 2006, which materially added to the significant loss of

($156,513.03) for 2006." (*Id.*)

Eisenberg's analysis is the product of reliable application of accounting principles

to the financial data he was given to evaluate. The court sees no gap in reasoning and

no attempt to simply stake out a position that the jury should adopt. Eisenberg's report

---

[1]These 2003 fees were accrued, but not paid, (2/15/08 Report at 2), which
means that the percentage of management fees *paid* in 2003 was 0%.

contains no credibility determinations or standardless assessments of which the individual Defendants complain. The report is cogent, concise and helpful to the jury. There is no basis for excluding Eisenberg's testimony. The court will therefore deny the motion in limine.

Defendants Fuhrman and Gruits request, in the alternative, a two-week extension of time to provide an opposing expert's report. (Defs.' Br. at 5-6.) They reason that, because "there is - at a minimum - a genuine question" about the admissibility of Eisenberg's report, they should not bear the cost of finding and retaining an expert to refute "what is truly not a matter of expert opinion." (*Id.* at 6.) The court rejects this argument. Pursuant to the court's analysis above, there can be no genuine question about the admissibility of Eisenberg's report. As the parties are aware, the court set a schedule when it extended the deadlines for expert reports. (1/29/08 Order). Defendants are free to challenge the admissibility of any expert report, but the presumption must be to prepare for further progression of the case assuming the court denies a motion raising a threshold issue. Were it otherwise, cases would grind to halt as soon as any dispositive motion was filed, based on the rationale that the court might grant the motion and therefore the work done in the meanwhile was unnecessary. Worse, Defendants Fuhrman and Gruits propose that merely raising a genuine question is sufficient. They undertook this strategy at their peril.

## IV. CONCLUSION

IT IS ORDERED that Defendant Gruits and Fuhrman's "Motion In Limine to

Exclude the Testimony of Amherst Partners, LLC" [Dkt. # 137] is DENIED.


       s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 21, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, April 21, 2008, by electronic and/or ordinary mail.

       s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522